### BELL ET AL., ADMINISTRATORS, *v.* WOODWARD ET AL.

The plaintiffs, as administrators, brought their bill against A. and B., stating that A., owning a tract of land described in the bill, made a mortgage of a certain part of it, and that this mortgage was held by B., as assignee ; that afterwards A. mortgaged the whole tract by two successive mortgages to the intestate. The bill sought to redeem the elder mortgage on part of the land, and to foreclose the two subsequent mortgages on the whole tract. The defendants pleaded, severally, that neither of the two mortgages to the intestate included that part of the land which was covered by the prior mortgage ; and on their motion two separate issues were sent to try the fact whether either of the two mortgages to the intestate included the land before mortgaged. In each of those two mortgages the premises were described " as the farm on which A. lived, and which he carried on ;" and the second of the two mortgages recited that the premises were the same as those described in the first. On trial of the issues it appeared that, after the first mortgage to the intestate and before the second, A. conveyed to B. the land covered by the elder mortgage then held by B. The jury found that the first mortgage to the intestate did include the land in dispute, and that the second did not : *Held :*

That the two issues were properly sent to try whether either of the plaintiff's two mortgages included the land in dispute.

That, as the question of fact in case of each mortgage was whether at the date A. occupied the land in dispute as part of the farm he lived on, the description in one mortgage might well include that land, though the description in the other did not.

That the recital in the second mortgage of A. to the intestate, that the premises were the same with those in the first mortgage, could not affect the title of B., which accrued before.

That there was no inconsistency with title of the plaintiffs in the finding of the jury that the first mortgage did, and the second did not, include the land in dispute.

That, as the plea of B. was a negative plea denying the title of the plaintiffs to the land in dispute, constituting a complete bar to the claim of the plaintiffs against B., he could not, after the issue on his plea was found against him, answer to the bill.

That where a defendant pleads a plea, which is a complete defence to the merits of the bill, and claims issues to try the facts pleaded, the court will not, after all exceptions to the trial of the issues have been overruled, entertain the defendant's application to the discretion of the court for another trial of the issues.

That, on the facts as they appear upon the return of these issues, the case of the plaintiffs is not multifarious ; that inasmuch as A. has the right to redeem both his mortgages to the intestate in order to reach his equity of redemption in the part of the land not included in the second mortgage, he was properly joined in the bill as to that mortgage.

That there is no such variance between the bill and the facts found, as will preclude the plaintiffs from redeeming the elder mortgage, and foreclosing their first mortgage on the whole tract described in the bill.

That, when a case has been reserved in order to settle legal questions as a guide for a future trial of the cause, and after a decision of the questions raised in the case, a party proceeds to repeated trials without applying for a rehearing of a point decided in the case reserved and after a verdict against him, the court will not entertain his application for the rehearing of a point so decided.

BILL IN EQUITY. The facts are sufficiently stated in the opinion of the court.

*A. R. Hatch* and *H. Bingham* for the plaintiffs.

*C. R. Morrison, Felton,* and *H. Hibbard* for the defendants.

PERLEY, C. J. The bill is the same that is stated in *Bell & al.* v. *Woodward & al.*, reported 42 N. H. 181. The plaintiffs claimed title to the land described in the bill under two mortgages to their intestate from Joshua Woodward: one dated February 28, 1842; the other, September 4, 1844. The defendant, James Woodward, claimed a part of the premises, called the "Ladd farm," under a conveyance to himself from Joshua Woodward, dated June 9, 1843.

The defendants pleaded severally that neither of the mortgages from Joshua Woodward to the intestate included that part of the premises described in bill, which is called the "Ladd farm," averring in their pleas that "the description in said mortgages does not include, nor does the description in either of them include the "Ladd farm" or any part of it; that said Joshua Woodward was not, either on the said 28th day of February, 1842, or on the said 4th day of September, 1844 or at the date or dates of said mortgages, or either of them, living on, or carrying on, the said Ladd farm or any part of it." After an amendment of the pleas the defendants moved for issues to try the facts set up in their pleas, and issues were ordered and joined as follows:

"The plaintiffs say that the description in the mortgage deed of Joshua Woodward to Joseph Bell dated the 28th day of February, 1842, did include the Samuel Ladd farm, so called." A second issue in like manner alleged that the mortgage deed of September 4, 1844, did include the Ladd farm, and the issues were sent for trial.

The premises, in the mortgage of February 28, 1842, are described as "all the farm in said Haverhill, lying on both sides of Ladd street, so called, on which I now live, and which I now carry on, estimated at one hundred and fifty acres, more or less; also the Sweetland farm, so called, in said Haverhill, being all the 100 acre lot no. eleven, west of the road through the same, in the first division of 100 acre lots in said Haverhill."

In the mortgage of September 4, 1844, the description of the premises is as follows: "All the farm in said Haverhill, lying on both sides of Ladd street, so called, which I now live on, estimated at one hundred and fifty acres, more or less; also the Sweetland farm, so called, in said Haverhill, being all the one hundred acre lot numbered eleven, west of the road through the same in the first division of lots in said Haverhill, being the same land described in my mortgage deed to said Bell, dated February 28, 1842, and recorded in the Grafton Registry, Lib. 168, Fol. 136."

Joshua Woodward had died before the trial of the issues, and the trial was between the plaintiff and James Woodward alone. The jury found that the mortgage of February 28, 1842 did include the Ladd

farm, and that the mortgage of September 4, 1844, did not. Exceptions to the trial of the issues were overruled ; and on their return James Woodward took the ground, that, as the descriptions of the two mortgages were substantially the same, and the description in the second mortgage referred to the description in the first, and in terms recited that it was the same land that was described in the first, if one description covered and included the Ladd farm, the other must ; and so, if the description in one of the mortgages did not cover and include that farm, the other could not ; and as this court could not determine on which of the issues the finding of the jury was right and on which it was wrong, the plaintiff could have no decree against James Woodward in respect to the Ladd farm.

He further contended that, in this equitable suit, the court had a discretion, if they thought justice had not been done in the trial of the issues, to order another trial, though there were no legal exceptions to the manner in which they had been once tried, such as would be sufficient to set aside a verdict in a suit at law ; and moved for another trial.

He also presented a petition for a rehearing of the question whether the deposition of Joshua Woodward, which was rejected on the trial, was competent evidence.

The description in both the mortgage deeds referred to the occupation of Joshua Woodward and would include all the land that he occupied as the farm he lived on. The issues were sent to find the fact whether at the date of the deeds he lived on or carried on the Ladd place as part of the farm. If he did, the description would cover and include that place ; otherwise, it would not. No other fact was involved in the issues submitted to the jury. The jury found that the description in the first mortgage included the Ladd farm, and that the description in the second mortgage did not ; or, in substance, that at the date of the first mortgage Joshua Woodward did live on the Ladd farm, and at the date of the second mortgage, did not. It has been decided that the issues were properly tried, and we must take it to be determined, as matter of fact, that Joshua Woodward did live on that farm when the first mortgage was made, and did not, at the date of the second mortgage.

It having been determined that, as two separate issues were sent for trial, it was proper and necessary that the jury should find them both, and that they might find one issue for the plaintiffs, and the other for the defendant, according as the evidence showed the occupation of the Ladd farm to have been at the date of the respective deeds. The defendant now contends that two separate issues should not have been sent for trial, and that on the return of the issues as found there can be no decree for the plaintiff ; and consequently that the sending of the issues and the trial and return of them must go for nothing.

It may help to understand the circumstances in which this new position is now taken, if we refer briefly to the history of this litigation as it appears on the records of the court. Joseph Bell, in his life-time, brought a writ of entry against Joshua Woodward, Joshua Henry Woodward, and James Woodward, this defendant, to recover the land described in this bill, claiming under the same two mortgages. His death

was suggested in 1851, and these plaintiffs came in, and prosecuted that suit. At the October term 1852, James Woodward pleaded *nul disseisin*, and the other defendants disclaimed. A case was then reserved on a motion of the defendants for separate trials, which is reported, 32 N. H. 64. An agreed case was afterwards reserved, which is reported in 34 N. H. 90. In that case it was decided that the mortgage to Philip Goss and wife, which the plaintiffs in this bill seek to redeem, was a subsisting security in the hands of James Woodward, by assignment, and therefore the plaintiff in that action became nonsuit. It thus appears that Mr. Bell, in his life-time, asserted his title to the Ladd farm under these mortgages.

The present suit was instituted in 1859. The defendants filed pleas and answers in aid of them; and on demurrer the pleas were found insufficient. This part of the case is reported 42 N. H. 181, and the decision made in December, 1860. In March, 1861, the pleas were amended. The defendants moved for issues to try the fact whether the descriptions in the mortgage deeds included the Ladd farm, and on their motion issues were framed, joined by this defendant, and sent for trial. The issues have been three times tried. In one of the trials the cause was taken from the jury by consent of the parties on a formal ruling of the court for the purpose of settling by the judgment of the whole court the numerous legal questions that had been raised. The case then reserved is reported 46 N. H. 315. At a second trial the jury *disagreed; and at the third trial the jury found the issues as they have* been returned. A case was reserved on exceptions to the rulings of the court on the last trial, which is reported 47 N. H. 539. It certainly would not be creditable to the administration of the law in this State, if after these repeated trials of fact by the jury, and so much examination by the court of the law raised at different times in the cause, it should be now discovered that all that has hitherto been done towards settling the rights of these parties must go for nothing; and after blundering about for ten years we should be obliged to retrace our steps and take a fresh start in a new career of litigation.

The issues for which the defendant moved, follow his plea; for his plea alleges that " the said Joshua Woodward was not, either on the said 28th day of February, or on the said 4th day of September, living on, or carrying on, the said Ladd farm." The plea thus tenders separate issues on the fact whether Joshua Woodward lived on or carried on the Ladd farm at the date of either of the deeds; and two separate issues were necessary to meet and determine the two separate allegations of the plea.

And, as matter of fact, Joshua Woodward might well be living on the Ladd farm when the first mortgage was made, and not, at the date of the second. There was no contradiction or inconsistency in finding that he did live on the farm at the date of one of the mortgages and not at the date of the other. It has been decided that the issues were properly tried. They have been returned, and the facts found by them must be taken as part of the case which we are to determine. What then are the legal deductions to be made from the fact that Joshua

Woodward did live on and carry on the Ladd farm, when the first mortgage was made on the 28th of February, 1842, and did not, when the second mortgage was made on the 4th of September, 1844?

It is extremely material to bear in mind that the question here is not between the parties to the two mortgage deeds. Joshua Woodward asserts no right against either of the deeds. The question is between the representatives of the mortgagee and James Woodward, who claims under another deed to himself from Joshua Woodward, the mortgagor. His deed is subsequent to the first mortgage and prior to the second. He takes his title subject to the prior conveyance of his grantor; but is not concluded, nor in any way affected, by his grantor's deed made afterwards. Taking the fact to be as the jury have found it, that Joshua Woodward was living on the Ladd farm when the first mortgage deed was made, the description in that deed covered and included the Ladd farm; and that mortgage being prior to his deed from Joshua Woodward, James Woodward could not question the title derived under it. But he might well say, as the jury have said: "I entered under my deed of June 9, 1843, and was myself in possession of the Ladd farm when the second mortgage was made on the 4th of September, 1844, and I am not bound by any thing that may be recited in that deed between Joshua Woodward and Joseph Bell. After Joshua Woodward had conveyed the land to me, he could not impair my title by any thing he might say in a deed to another party." It is plain on principles too elementary to require the citation of authorities, that James Woodward would be bound by the description in the mortgage of his grantor made prior to his own deed, and equally plain that he would not be bound, nor in any way affected, by the description in the mortgage made after his title accrued. Joshua Woodward could not defeat the title he had before conveyed by any reference in a subsequent conveyance to the description in the prior mortgage.

From the fact that when the first mortgage was made Joshua Woodward lived on and carried on the Ladd farm, the conclusion is inevitable that James Woodward took his deed afterwards subject to that mortgage; and it is also clear that he was not bound by the reference in Joshua Woodward's subsequent mortgage to the former mortgage for the description of the premises; for the statement in the subsequent deed that the premises in that deed are the same as in the first mortgage is *inter alios*, and James Woodward does not derive his title under that mortgage, nor by a deed subsequent to it.

As James Woodward's title was subsequent to one of the mortgages and prior to the other, it was not only proper, but necessary, that separate issues should be sent in reference to the two mortgages; for, admitting, that, as between the parties to the two mortgages, the description in both must be taken to be substantially the same by virtue of the reference in the second mortgage to the description in the first, James Woodward would not be bound by the recital in a deed made between other parties after his title accrued. The issues have fully answered the object for which they were sent; for they show that James Woodward holds the Ladd farm subject to the first mortgage, made on the 28th of

February, 1842, before his deed of June 9, 1843, but not to the mortgage of September 4, 1844, made after title accrued.

The defendant maintains that, as these are issues out of chancery, the court will direct another trial, if there is reason to suppose that justice has not been done by the finding of the jury, though there may be no legal objection to the trial, such as would be required to set aside a verdict in a suit at law, and moves that the issues be sent to a new trial.

The recent case of *Clark* v. *The Congregational Society*, 45 N. H. 331, we regard as decisive, that where, as in this instance, issues are sent on demand of a defendant as his constitutional right, the same rules. prevail in this respect as in trials at law.    Indeed it is said in *Clark* v. *The Congregational Society*, that the general rule is the same even where the court send the issues for their own information.    We are satisfied with the case of *Clark* v. *The Congregational Society*, and think any other rule would be much too loose for application in practice. However it may be where the court send issues as matter of discretion for their own information, in a case like this, where a defendant claims the trial of a fact by the jury, and is entitled to it as matter of right under the constitution, the trial must be governed by the rules applicable to other trials by jury so far as the binding effect of the verdict is concerned.    We are of opinion that the court have no discretion to send these issues to another trial, and without entering on the inquiry whether there is reason to suppose that injustice has been done by the finding of the jury, the motion for another trial must be denied.

Another question is before us on the petition of the defendant for a rehearing of the decision made in December, 1865, on the question whether the deposition of Joshua Woodward was competent evidence in the trial of the issues.    It may be of some importance to consider in what way and with what object the question as to the admissibility of Joshua Woodward's deposition, and the other questions raised on the first trial of the issues, were reserved for the determination of the whole court.

At the March term, 1864, the issues first came on for trial before Bell, C. J., and on the introduction of the evidence numerous legal questions were raised, which the court was called on to decide ; among them, the question whether the deposition of Joshua Woodward was admissible.    This deposition and much of the other evidence offered was ruled by the Chief Justice to be incompetent ; and, as is stated in the case reserved, " for the purpose of obtaining a decision of the whole court upon the admissibility of the evidence offered and not admitted, the court, with the consent of the counsel, directed a verdict for the plaintiffs, and reserved a case for the consideration of the whole court."    The deposition of Joshua Woodward was offered by the defendant on that trial and ruled out as incompetent ; and whether the deposition was legally admissible was one of the questions reserved in that case.    The whole court, after elaborate argument of the case, decided that the ruling of the Chief Justice rejecting the deposition was correct.    *Bell* v. *Woodward*, 46 N. H. 315.

In the second trial of the issues the deposition was not admitted, and

whether it was then offered does not appear.  At that trial, the jury disagreed.  At the third and last trial, the deposition was offered, not, however, on the ground that the decision of the whole court against its admissibility was erroneous as the case stood when the decision was made, but on the ground that the disclaimer of Joshua Woodward in the suit at law before mentioned, the record of which was then for the first time offered, discharged the interest of the witness.  This new evidence of the record was rejected on the trial, and the ruling of the court rejecting it has been decided by the whole court to have been right, as reported in *Bell* v. *Woodward*, 47 N. H. 539.  That decision as to the admissibility of the record we do not understand that we are now asked to reconsider ; if we were, we see no reason for doubting its correctness.  Laying, then, the record in the suit at law out of the case, the question as to the admissibility of Joshua Woodward's deposition stands exactly as it did in the case first reserved, and decided in December, 1865.

, The defendant now contends that the decision of the whole court made in 1865, excluding the deposition was erroneous, and asks that it may be reversed.  What will be the consequence if he prevails in this application?  The deposition can only be used on trial of the issues ; and to reach the defendant's object, the finding of the issues must be set aside, and the issues sent again to a new and independent trial.  The defendant, without asking for a rehearing of the question, has gone to two trials of the issues, and now after a verdict against him he asks that the rule of law, under which the trials proceeded, shall be reversed, and the issues tried again.  The first question that meets us is, whether after this long acquiescence and these repeated trials, the court will re-open a question thus solemnly determined for the express purpose of furnishing a safe and settled rule to govern the trials that have since taken place.  We understand this precise question, that is to say, whether we will reconsider this point, to have been raised and determined on the hearing of the case reserved on the last trial of these issues and reported 47 N. H. 539.  There was then no formal petition for a rehearing of the point, but the question was raised, and after elaborate argument of counsel and full consideration by the court, it was decided that it was too late to entertain an application for a rehearing of the question.  The effect of reversing the decision would have been the same then as now.  There are no new reasons for a rehearing, and we are satisfied with the decision then made refusing a new hearing.  In this case there are strong and special grounds for holding that the parties, after assenting to the reservation of questions raised on a partial trial, for the express purpose of establishing, by the judgment of the whole court, the law on which future trials should proceed, cannot be permitted to question the correctness of the decision on the points thus submitted, after such long acquiescence and after repeated trials in accordance with the decision.

[After the foregoing opinion of the court was delivered, and at the same term, the defendant, James Woodward, proposed to make answer to the bill ; and contended that as the case stood after the return of the

issues he was entitled as a matter of equity practice to make answer to the bill. The question was reserved and argued; and in argument he took the further position that the case of the plaintiffs, after the facts returned by the issues became part of it, was multifarious, because the bill sought a foreclosure of the second mortgage of Joshua Woodward against James Woodward, when it now appeared that the plaintiffs had no title under that mortgage to the land claimed by James Woodward. He also contended that there was a variance between the bill and the proof, because it appeared that the second mortgage to the intestate did not include the part of the land described in the bill, which had been conveyed to James Woodward, called the Ladd farm.]

PERLEY, C. J. The only question reserved for consideration at the present time is whether James Woodward after the return of the issues sent to try the facts of his plea is entitled to answer the bill.

So far as James Woodward and the plaintiff's claim to the Ladd farm is concerned the plea has in no respect the character of a plea in abatement; for by a plea in abatement the defendant excuses himself from answering to the merits of the plaintiff's claim, either because the plaintiff has not resorted to the proper tribunal, or because, on account of some defect in form or the want of necessary parties, the merits of the case cannot be fully and conveniently tried in the way the claim is made. This plea was neither declinatory, objecting to the jurisdiction of the court, nor dilatory, objecting for want of parties or of form. It denied the whole title of the plaintiffs to that part of the premises which was claimed by this defendant; for it denied that the mortgages, under which the plaintiffs claimed, included that part of the land; and, if the plea had been made out in fact, neither in this suit nor in any other, could the plaintiffs have maintained their claim against this defendant in respect to that part of the land. It was a mere negative plea; and the negative fact that the mortgages did not cover the land would be a complete defence to any claim under the mortgages, wherever and however made.

The same defence might be made by answer; and if it had been made by answer, and the negative fact relied on by the answer were found against the defendant, it is quite clear that he could not by another answer set up another defence; certainly not without leave to withdraw his answer and make a new defence by way of amendment. Until a comparatively late date it was a disputed point whether a mere negative plea, like one denying the title of the plaintiff, could be allowed; and since it is now established that such a plea is good, there would seem to be no reason why a defence of that character made by plea should not be followed by the same consequences as when the defendant elects to make the same defence by answer. It was held accordingly in *Dows* v. *Mc-Michael,* 2 Paige 244, that where a defendant, instead of answering to to the bill, pleads in bar a matter of fact which is a full defence to the bill, and "the plea is found not to be true, it will be overruled as false, and the plaintiff will be entitled to a decree as on a bill taken as confessed." In *Flagg* v. *Bonnel,* 2 Stockton 82, the question was whether the fact pleaded in bar by the defendant having been found again st him,

the plaintiff was entitled to a decree according to his case as made by the bill, or the court would permit the defendant to answer; and the application of the defendant for leave to answer was denied. In that case the chancellor says : " In equity, if a defendant interposes a plea in bar and the plaintiff replies to it, the determination of that issue is final." So in the *Mad. Plank Road* v. *The Wal. Plank Road,* 5 Wis. 173, it was decided that a plea in equity to the whole bill must be so complete that, if true, all the equities of the bill will be defeated, and it must be sufficient to determine the whole cause." In *Wood* v. *Strickland,* 2 Ves. & Beames 150, 158, it is said that upon a plea found false the plaintiff is entitled to a decree; and if a discovery is wanted, the defendant is ordered to be examined upon interrogatories." The same way are *Brownsword* v. *Edwards,* 2 Ves. Sen. 243, 247; *Bailey* v. *Adams,* 6 Ves. 586, 594; *Thring* v. *Edgar,* 2 Sim. & Stu. 274, and *Watkins* v. *Stone,* 2 Sim. & Stu. 560, 572.

We are of opinion that the defendant, James Woodward, is not entitled to answer the bill; and that the plaintiffs are entitled to a decree according to the case stated in their bill, except so far as it is contracted by the finding of the issues which have been returned.

The other questions raised in argument on this hearing were equally open to the defendant on the case reserved when the issues were returned, for no new fact or circumstance has been since introduced, that can affect these questions, and they are not regularly before us at this time. We have, however, considered, and are ready to decide them.

One of the new grounds now taken by the defendant is, that, on the facts as they are established by the finding of the issues, there is a misjoinder in the plaintiff's case, which makes it multifarious.

We understand the defendant's position to be this : it now appears that the plaintiffs have no title under their second mortgage to the land claimed by James Woodward, and therefore he has no connection with that mortgage, and Joshua Woodward, as to that mortgage, is i nproperly joined in the suit with James Woodward and the prior mortgage. What then are the facts now established in the case? Joshua Woodward, on the 28th of February, 1842, owned two pieces of land and mortgaged them both to the intestate. On the 9th of June, 1843, he conveyed one of the pieces to James Woodward, subject to the prior mortgage, and on the 4th of September, 1844, he mortgaged to the intestate the piece not before sold to James Woodward for security of another debt. The bill makes Joshua Woodward a party defendant and seeks to foreclose both the mortgages. The plaintiffs have the right to foreclose their first mortgage on the land claimed by the defendant. The amount of the debt secured by the first mortgage must be liquidated on an account taken of the debt and the rents and profits. But Joshua Woodward has the right in equity to redeem the land not conveyed to James Woodward by the deed of June 9, 1843, and, to discharge the incumbrance on that land, he must redeem, and has the right to redeem, both the mortgages on all the land ; and the sum he must pay to redeem the land, in which he has an equity of redemption, will depend on the amount of the debt secured by the first mortgage.

Joshua Woodward, therefore, has a direct interest in the liquidation of the amount due on the first mortgage, because he must pay that amount before he can remove the incumbrance on the land which he would redeem from the second mortgage. If he were not party to this suit, and should come to redeem, he would not be bound by the decree made here, fixing the amount due on the first mortgage. He is therefore a proper, if not a necessary, party to this bill. It is a general rule in equity that all who are interested in the subject-matter of the cause should be made parties, to prevent multiplicity of suits; and this alone, the ability of the court to deal in one suit with all parties interested, and adjust their different rights at once, is an important head of equity jurisdiction. 1 Coventry's Powell on Mortgages, 262 note; *Palk* v. *Clinton*, 12 Ves. 48; *Brown* v. *Simons*, 45 N. H. 211; *Chase* v. *Searles*, 45 N. H. 511; *Fletcher* v. *Chase*, 16 N. H. 38; *Merrit* v. *Hosmer*, 11 Gray 276. And it is no objection that separate decrees may be necessary to settle the rights of the different parties, provided they all have a common centre of interest, as they all have in this case, to wit, in the liquidation of the amount due on the first mortgage. *Abbot* v. *Johnson*, 32 N. H. 9. We are of opinion that Joshua Woodward was properly joined as defendant in respect to the second mortgage, and that the case of the plaintiffs is not multifarious.

There is nothing in the objection on the ground of variance. It is the common case of a party, who correctly describes his claim and recovers part of it.